| Fill in this information to identify the case: | | | |
|---|---|---|---|
| Debtor 1 | AMY | LYNN | WHEELER |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filling) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: WESTERN District of WASHINGTON

Case number (If known) 26-42069

Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

**Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.**

## Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

| | | | |
|---|---|---|---|
| **1. Who is the creditor?** | Carvana, LLC<br>Name of the creditor | | |
| **2. How much is the debt?** | On the date that the bankruptcy case is filed | $31,920.98 | |
| | To be paid under the reaffirmation agreement | $31,920.98 | |
| | subject to the terms of the reaffirmed pre-petition loan documents. Pay-off as of 07/15/2026<br>$465.00 per month for 81 months (if fixed interest rate) **or** until paid as per the terms of the reaffirmed pre-petition loan document (on the maturity date, all outstanding amounts owed under this reaffirmation agreement shall be immediately due and payable). *See **additional terms at end of cover sheet, if applicable.** | | |
| **3. What Is the Annual Percentage Rate (APR) of Interest? (See Bankruptcy Code § 524(k)(3)(E).)** | Before the bankruptcy case was filed | 4.99% | |
| | Under the reaffirmation agreement | 4.99% | ☒ Fixed Rate<br>☐ Adjustable Rate |
| **4. Does collateral secure the debt?** | ☐ No<br>☒ Yes. Describe the collateral. 2025 Jeep Grand Cherokee Utility 4D Altitude 4WD 3 VIN: 1C4RJHAG5S8777969<br>Current market value $38,100.00 | | |
| **5. Does the creditor assert that the debt is nondischargeable?** | ☒ No<br>☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable. | | |

**6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.**

| **Income and expenses reported on Schedules I and J** | | **Income and expenses stated on the reaffirmation agreement** | |
|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $10,649 | 6e. Monthly income from all sources after payroll deductions | $10,649 |
| 6b. Monthly expenses from line 22c of Schedule J | –$8195 | 6f. Monthly expenses | –$8195 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | –$0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | –$0 |
| 6d. **Scheduled net monthly income**<br>Subtract lines 6b and 6c from 6a.<br>If the total is less than 0, put the number in brackets. | $2453 | 6h. **Present net monthly income**<br>Subtract lines 6f and 6g from 6e.<br>If the total is less than 0, put the number in brackets. | $2453 |

| | | |
|---|---|---|
| 7. **Are the income amounts on lines 6a and 6e different?** | ☑ No<br>☐ Yes. | Explain why they are different and complete line 10. |
| 8. **Are the expense amounts on lines 6b and 6f different?** | ☑ No<br>☐ Yes. | Explain why they are different and complete line 10. |
| 9. **Is the net monthly income in line 6h less than 0?** | ☑ No<br>☐ Yes. | A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. |
| 10. **Debtor's Certification about lines 7-9**<br>If any answer on lines 7-9 is *Yes*, the debtor must sign here.<br>If all the answers on lines 7-9 are *No*, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br>X amy Wheeler<br>Signature of Debtor 1 | X<br>Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. **Did an attorney represent the debtor in negotiating the reaffirmation agreement?** | ☐ No<br>☑ Yes. | Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☑ Yes. |

## Part 2: Sign Here

**Whoever fills out this form must sign here.**

**I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties Identified on this *Cover Sheet for Reaffirmation Agreement.***

X /s/ Pinkeshkumar Nishad

Date 08/24/2026
MM/DD/YYYY

Pinkeshkumar Nishad
Printed Name

Check one:

☐ Debtor or Debtor's Attorney

☒ Creditor or Creditor's Attorney

*Additional Terms:

This form 427 has been modified by AIS in conformance with FED. R. BANKR. P. 4008 and compliance with 11 U.S.C. § 524(c). This Form 427, as modified, is substantially similar to Official Form 427.

Check one.
☐ **Presumption of Undue Hardship**
☒ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

In re AMY LYNN WHEELER
Debtor(s)

Case No. 26-42069
Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Carvana, LLC

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Automobile

B. ***AMOUNT REAFFIRMED:*** $31,920.98

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 07/21/2026, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is 4.99%.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☒ Fixed rate ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one):*

☒ $465.00 per month for 81 months starting on 07/29/2026.

☐ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

Description: 2025 Jeep Grand Cherokee Utility 4D Altitude 4WD 3 VIN: 1C4RJHAG5S8777969
Current Market Value $38,100.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☒ Yes. What was the purchase price for the collateral? $32,862.14
☐ No. What was the amount of the original loan? $________

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

| | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $31,920.98 | $31,920.98 |
| Annual Percentage Rate | 4.99% | 4.99% |
| Monthly Payment | $465.00 | $465.00 |

The terms stated herein are contingent upon the execution and filing of the reaffirmation agreement prior to the discharge or, if applicable, approval of the reaffirmation agreement by the court. Any loan extensions, modifications, late payments, payments to principal or other accruals of interest may alter the contractual paid in full date or final payment amount otherwise set forth in this reaffirmation agreement or the reaffirmation agreement cover sheet.

H.☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one. ☑ Yes ☐ No

B. Is the creditor a credit union?

Check one. ☐ Yes ☑ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

| | |
|---|---|
| a. Monthly income from all sources after payroll deductions (take-home pay plus any other income) | $ 10,649 |
| b. Monthly expenses (including all reaffirmed debts except this one) | $ 7,730 |
| c. Amount available to pay this reaffirmed debt (subtract b. from a.) | $ 2919 |
| d. Amount of monthly payment required for this reaffirmed debt | $ 465 |

*If the monthly payment on this reaffirmed debt (line d.)* ***is greater than*** *the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe this reaffirmation agreement will not impose an undue hardship on me or my dependents because:

Check one of the two statements below, if applicable:

☑ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes", check the following statement, if applicable:

☐ You believe this reaffirmation agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date: 8/6/26 Signature: Amy Wheeler
AMY L WHEELER - *Debtor*

Date: ______ Signature: ______
*Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor Carvana, LLC

AIS Portfolio Services, LLC
4515 N Santa Fe Ave
Oklahoma City, OK 73118

Pinkeshkumar Nishad *Print Name* *Address*

AIS Portfolio Services, LLC Bankruptcy Servicer for Carvana, LLC

/s/ Pinkeshkumar Nishad 08/24/2026

*Print Name of Representative* *Signature* *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 8-5-26 Signature of Debtor's Attorney: ______

Print Name of Debtor's Attorney: JAMES F DART

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

   Please send any Notice of Rescission of this Reaffirmation Agreement via physical & electronic mail to the following addresses for quicker processing:

   AIS Portfolio Services, LLC
   4515 N Santa Fe Ave
   Oklahoma City, OK 73118
   ECFNotices@aisinfo.com

6. **When will this reaffirmation agreement be effective?**

**a. If you *were represented* by an attorney during the negotiation of your reaffirmation agreement and**

**i. if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

**ii. if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

**b. If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing,at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. INSTRUCTIONS

1. Review these Disclosures and carefully consider the decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney section (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form 2400B to do this.

C. **DEFINITIONS**

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage Rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

* This form 2400A has been modified by AIS Portfolio Services, LLC in conformance with FED. R. BANKR. P. 4008 and compliance with 11 U.S.C. § 524(c). This Form 2400A, as modified, is substantially similar to Official Form 2400A.

1930 W. Rio Salado Pkwy
Tempe, AZ 85281
Office: 602.852.6604
Fax:
Email: legal@carvana.com

September 20, 2021

To Whom It May Concern,

This letter shall serve as a formal notice that Bridgecrest Credit Company, LLC is a servicer of Carvana accounts and, in that capacity, is an agent of Carvana, LLC.

If you have any questions, please contact me at the email address or phone number above.

Sincerely,

Name:

Title: General Counsel, Vice President, and Secretary

Demo Watermark (http://www.imagepdf.com/)

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# Retail Installment Contract And Security Agreement

You may buy the vehicle described below for cash or on credit. By signing this contract you choose to buy the vehicle on credit subject to the terms of this contract. "You" and "your" refer to the buyer and Co-Buyer, if any. "We", "us", and "our" refer to the Seller-Creditor or to anyone to whom the Seller assigns this contract.

**Seller-Creditor:**
Carvana Chrysler Dodge Jeep Ram of Casa Grande
2425 E FLORENCE BLVD SUITE D
CASA GRANDE AZ 85194-5434

**Buyer:**
Amy Lynn Wheeler
8037 Dagny SW St
Olympia WA 98512-5976

**Co-Buyer:**
Terry Lynn Roth
814 17th St SE
Puyallup WA 98372

Stock Number [redacted]
Contract Date: 03/29/2026

| New/Used | Year / Make / Model | VIN | Odometer | Primary Use |
|---|---|---|---|---|
| New | 2025 Jeep Grand Cherokee | 1C4RJHAG5S8777969 | 53 | Personal, Family or Household |

## TRUTH-IN-LENDING DISCLOSURE

| **ANNUAL PERCENTAGE RATE** | **FINANCE CHARGE** | **Amount Financed** | **Total of Payments** | **Total Sale Price** |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit, including your down payment of $5,175.11 is |
| 4.99% | $6,136.01 | $32,862.14 | $38,998.15 | $44,173.26 |

Your payment schedule is:

| **No. of Payments** | **Amount of Payments** | **When Payments are Due** |
|---|---|---|
| 83 | $465.00 | Monthly beginning 04/29/2026 |
| 1 | $403.15 | 03/29/2033 |

**Prepayment**: If you pay all or any part of the contract early, you will not have to pay a penalty.
**Additional Info**: Refer to this contract for additional information on nonpayment, prepayment, security interest, default, and our right to demand full repayment before the scheduled date.

**Security**: You give us a security interest in the vehicle.

**Late Charge**: If payment is not received in full within 10 days after the due date, then you will be charged a late charge of 5% of the unpaid balance of the installment.

## WARRANTIES

Except as provided below for used vehicles, **the vehicle is sold as is, with all faults, and without any warranty of merchantability or fitness for a particular purpose**, unless we provide a written warranty or enter into a service contract with you within 90 days of the Contract Date of this agreement. This does not affect any manufacturer's warranty, which is made by the manufacturer, not by us.

**FOR USED VEHICLES**

We have provided you with a copy of our express limited warranty agreement. See the express limited warranty agreement for complete coverages, exclusions, and other details. State law may also provide you with certain warranty rights as described below. **The implied warranties of merchantability, fitness for a particular purpose, and any other implied warranties do not apply unless required by law.** We will only make repairs on the vehicle as required under the limited warranty and applicable state law.

## ARBITRATION AGREEMENT

The "Arbitration Agreement | Waiver of Purchaser's Right to Sue" signed by you with this contract is incorporated into this contract by this reference.

Initial AW DS TR



© 2026 Carvana, LLC

Demo Watermark (http://www.imagepdf.com/)


THIS IS A COPY
This is a copy view of the Authoritative Copy held

## ITEMIZATION OF AMOUNT FINANCED

| | | | | |
|---|---|---|---|---|
| A | Cash Price | | | |
| 1 | Cash Price of Vehicle | | $41,990.00 | |
| 2 | Sales Tax | | $0.00 | |
| 3 | Upfront Nonrefundable Shipping | | $0.00 | |
| 4 | Optional Delivery Charge | | $0.00 | |
| 5 | Subtotal (A1 thru A4) | | $41,990.00 | |
| 6 | Less: | | $4,250.00 | |
| | (a) Rebates and Non-Cash Credits | $4,250.00 | | |
| | (b) N/A | N/A | | |
| **7** | **Total Cash Price** (A5-A6) | | | **$37,740.00** |
| B | Down Payment | | | |
| 1 | Cash Down Payment | | $0.00 | |
| | Trade-In 2024 (Year) Toyota (Make) Grand Highlander (Model) | | | |
| 2 | Trade-In Allowance | | $45,000.00 | |
| 3 | Trade-In Payoff Paid by Seller to: Wells Fargo | | $39,824.89 | |
| 4 | Net Trade-In (B2-B3; If $0 or less enter $0 and see line H) | | $5,175.11 | |
| 5 | Upfront Nonrefundable Shipping | | $0.00 | |
| 6 | Other: | | N/A | |
| | (a) N/A | N/A | | |
| | (b) N/A | N/A | | |
| 7 | Total Down Payment (B1+B4+B5+B6) | | $5,175.11 | |
| **C** | **Unpaid Balance of Cash Price** (A7-B7) | | | **$32,564.89** |
| D | *Optional Service Contracts | | | |
| 1 | *Service Contract paid to SilverRock | | N/A | |
| 2 | *Cosmetic Protection paid to SilverRock | | N/A | |
| 3 | *Prepaid Maintenance paid to SilverRock | | N/A | |
| E | *Optional GAP Waiver paid to Seller | | N/A | |
| F | Paid to Public Officials | | | |
| 1 | Registration Fee | | $30.00 | |
| 2 | Title Fee | | $0.00 | |
| 3 | Emergency Medical Services Fee | | $6.50 | |
| 4 | License Service Fee | | $0.75 | |
| 5 | State Parks Donation | | $5.00 | |
| 6 | Service Fee | | $8.00 | |
| 7 | Registration Filing Fee | | $4.50 | |
| 8 | Plate Reflectivity Fee | | $4.00 | |
| 9 | Plate Issue Fee | | $100.00 | |
| 10 | Title Filing Fee | | $5.50 | |
| 11 | Registration Service Fee | | $8.00 | |
| 12 | Title Service Fee | | $15.00 | |
| 13 | Title Application Fee | | $15.00 | |
| 14 | Out of State Service Fee | | $50.00 | |
| 15 | Weight Fee | | $45.00 | |
| G | Online Registration Filing Fee | | $0.00 | |
| H | Financed Trade-In Balance paid to: Wells Fargo (If Trade-In Allowance is less than Trade-in Payoff enter B3-B2) | | $0.00 | |
| **I** | **Total of Other Charges and Amounts Paid to Public Officials** (D+E+F+G+H) | | | **$297.25** |
| **J** | **Amount Financed** (C+I) | | | **$32,862.14** |

* We may retain a portion of this amount.

COPY VIEW

Initial DS

Demo Watermark (http://www.imagepdf.com/)

THIS IS A COPY
This is a copy view of the Authoritative Copy held

## OPTIONAL GAP WAIVER

A GAP waiver agreement is not required to obtain credit, and will only be provided if you sign below and agree to pay the additional charge listed in the itemization of the amount financed. Refer to the GAP waiver agreement for complete details of what will or will not be covered in the event of a total loss. The GAP waiver agreement is a part of this contract.

Term (months): N/A N/A N/A
By: Amy Lynn Wheeler Date

## PAYMENTS AND FINANCE CHARGE

**A. PURCHASE**. You agree to buy and we agree to sell you the vehicle described above at our address as stated on page 1 of this contract.

**B. PAYMENTS**. You promise to pay the Amount Financed as shown above in the Truth-In-Lending Disclosure section plus interest at 4.99% per year (the "Contract Rate") accruing on the unpaid balance of the Amount Financed from the date of this contract until all amounts due under this contract are paid in full. You must pay this contract according to the payment schedule and late charge provisions shown in the Truth-In-Lending Disclosure. You also promise to pay, on or before the date of this contract, the Total Down Payment shown in the Itemization of Amount Financed.

**C. FINANCE CHARGE**. This is a simple interest contract. The Finance Charge you pay will depend on your payment practices. If you make your payments late or in less than the scheduled amount, then the Finance Charge will be more than is indicated on Page 1. The Finance Charge is computed on a daily basis at the Contract Rate on the unpaid balance of the Amount Financed. Finance charges are based on the actual number of days in a year.

**D. PREPAYMENT**. You may prepay all or any part of the amount due on this contract at any time without penalty.

**E. APPLICATION OF PAYMENTS**. To the extent permitted by applicable law, we may apply payments to any fees and charges owed in this contract, the earned and unpaid part of the Finance charge, and the unpaid part of the Amount Financed in any order we choose.

## SECURITY AGREEMENT

**A. SECURITY INTEREST**. You give us a security interest in: (1) the vehicle and all goods attached to it; and (2) all service contracts and GAP waiver agreements we financed for you and their proceeds including any refunds of premiums or charges. This security interest secures payment of everything you owe under this contract. You will ensure that the certificate of title for the vehicle shows our security interest in the vehicle. You must not allow any other security interest in the vehicle without our prior written permission.

**B. INSURANCE**. You must have insurance on the vehicle protecting against loss and physical damage for the term of this contract. You must name us as a loss payee. **You may obtain insurance from a company of your choice**. The type and amount of insurance that you obtain must be acceptable to us. You must use insurance proceeds to repair the vehicle, unless the damage to the vehicle is considered a total loss. If the damage to the vehicle is considered a total loss, you must use the insurance proceeds to pay what you owe under this contract. If your insurance on the vehicle doesn't pay all you owe, you must pay what is still owed.

**C. USE OF VEHICLE**. You must keep the vehicle in your possession and in good condition. You must notify us of changes in your address. You must obey all laws in using the vehicle. You may not sell or rent the vehicle. You must keep the vehicle free from the claims of others. You must not take the vehicle outside of the United States, except for up to 30 days in Canada or Mexico, without our prior written consent.

**D. ELECTRONIC TRACKING**. The vehicle may have an electronic location tracking device or may be equipped with a location tracking telematics device installed by the vehicle manufacturer (such as GPS). If you default, then you permit us to use these devices to find and recover the vehicle.

## LATE CHARGES AND FEES

**A. RETURNED INSTRUMENT CHARGE**. You will pay us a returned instrument charge of $15 for any check that is returned unpaid for any reason, except as limited by law.

**B. LATE CHARGE**. You will pay a late charge on each late payment as shown in the Truth-In-Lending Disclosure.

**C. COLLECTION COSTS**. Except as otherwise provided by law, you must pay all reasonable expenses related to enforcing this contract, including collection expenses, attorneys' fees to an attorney who is not our salaried employee and other costs.

## DEFAULTS AND REMEDIES

**A. DEFAULT**. You will be in default if:

1. You do not make a payment when it is due, including any down payment;
2. You gave us false or misleading information on your application related to this contract;
3. You file a bankruptcy petition or one is filed against you; or
4. You fail to perform any obligation under this contract.

If you default, then we can exercise any rights we have under this contract or under the law.

**B. PAYMENT IN FULL**. If you default, then we may demand that you pay all you owe under this contract at once.

Initial AW DS TR

© 2026 Carvana, LLC

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**C. REPOSSESSION, REDEMPTION, AND SALE.** If you default, then we may take (repossess) the vehicle from you. After repossession, you will receive a notice explaining your right to redeem (buy back) the vehicle. You may also have a right to reinstate the contract if we offer that right. If you choose not to redeem the vehicle or reinstate the contract, then the vehicle will be sold. The money from a sale will be applied first to our allowed expenses and then toward the remaining balance due on the contract. To the extent permitted by law, allowed expenses include our expenses for repossessing, storing, preparing for sale, and selling the vehicle. Allowed expenses also include attorneys' fees to an attorney who is not our salaried employee and court costs as permitted by law. Any surplus from a sale will be returned to you. If the sale proceeds are not enough to cover the amount owed, then you must pay the remaining balance plus interest at the highest lawful rate.

We may take possession of any personal property left in the vehicle at the time of repossession. If you do not pick up your personal property within the time allowed by law, then we will dispose of it in any way we choose.

## ADDITIONAL TERMS AND CONDITIONS

**A. TRADE-IN.** You promise that you own any vehicle you sold to us as a Trade-In, free from security interest except as you have disclosed to us in writing. Your sale to us of a Trade-In vehicle cannot be canceled after we take possession of it for any reason, even if you return the vehicle you purchased from us. Additional terms regarding our purchase of your Trade-In are set forth in a separate document, provided to you at the same time as this contract, titled "Vehicle Purchase Agreement." The Vehicle Purchase Agreement constitutes part of this contract.

**B. SERVICE CONTRACT REFUNDS.** This contract may contain charges for optional service contracts. We may claim benefits under such contracts. If you are in default under this contract, then we may cancel any optional service contracts to obtain refunds of unearned charges. If we or you cancel a service contract, then we will apply any refunds to the amount you owe. If you receive a refund for a cancelled service contract, then you must pay the refund to us.

**C. ADDRESS CHANGES AND NOTICES.** Your address set forth in this contract is your residence. You will provide us with notice no later than 14 days after you change your residence address. Whenever we are required to send you a notice, we will send it to your residence.

**D. FURTHER ASSURANCE.** You must cooperate with us and take all reasonable actions (including executing or notarizing documents we request) to effectuate this contract, including those necessary to properly title and register, or correct issues concerning the title and registration of, the vehicle or any trade-In vehicle.

**E. LIABILITY INSURANCE.** State law requires that you maintain liability insurance. You must obtain liability insurance prior to taking possession of the vehicle and provide proof of such insurance upon our request.

**F. COMMUNICATIONS.** In this Section (Communications) the term "We" also includes Service Providers. We may monitor and record phone calls with you about your account. We may contact you for any purpose related to this contract by any means including by mail, email, phone, and text messages. We may use prerecorded or artificial voice messages. We may use automatic telephone dialing systems. We may use any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.
"Service Providers" means any one or more of the following: (1) Bridgecrest Credit Company, LLC or its authorized agents; (2) SilverRock Automotive, Inc. or its authorized agents; and (3) any other service provider authorized by us.

**G. NEGATIVE CREDIT REPORT NOTICE.** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**H. LOAN SERVICING.** This contract will be serviced by Bridgecrest Credit Company, LLC. If you have any questions about payment application, amounts due or other servicing items, contact Bridgecrest Credit Company, LLC, at 7465 E Hampton Ave, Mesa, AZ 85209 (800) 967-8526 or other such address provided to you.

**I. APPLICABLE LAW.** Federal law and Washington law will apply to any dispute arising under this contract.

## COSIGNER

The person who signs below as "Cosigner" guarantees the payment of the amount owed under this contract. The Cosigner is liable for the entire amount owed, even if the Seller-Creditor (i) gives the Buyer more time to pay; or (ii) releases any security interest. The Seller-Creditor can collect the amount owed under this contract from the Cosigner without first trying to collect from the Buyer. The Cosigner acknowledges receipt from the Seller-Creditor, prior to signing below, of a separate "Notice to Cosigner." This contract does not give an ownership interest in the vehicle to the Cosigner. The Cosigner will not be identified on the certificate of title for the vehicle or the vehicle registration.

DocuSigned by:

| | |
|---|---|
| Cosigner: [redacted] | 03/29/2026 Date |

814 17th St SE
Puyallup WA 98372

Initial

Demo Watermark (http://www.imagepdf.com/)
COPY VIEW

THIS IS A COPY
This is a copy view of the Authoritative Copy held

## NOTICES AND SIGNATURES

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**USED VEHICLE BUYER'S GUIDE: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

**ELECTRONIC RECORDS AND SIGNATURES**. This contract is documented using electronic records and signatures. Your electronic signature has the same effect as your written ink signature. You received an electronic copy of this contract after it was signed by us. The authoritative copy of this contract will reside in a document management system controlled by us in the ordinary course of our business. We may transfer this contract to another company in the electronic form or as a paper version of the electronic form. The holder of this contract may enforce it in the electronic form or as a paper version of that electronic form. You may enforce the electronic copy you received, either in electronic format or printed.

This contract is the entire agreement between you and us relating to this credit transaction. This contract replaces any prior agreements related to this credit transaction. There are no unwritten agreements regarding this credit transaction. This contract cannot be changed unless the changes are in writing signed by us and you. Oral changes are not binding.

Buyer Amy Wheeler [redacted] Cobuyer Terry Roth [redacted]

If any portion of this contract is invalid, the remaining sections stay valid. You authorize us to correct clerical errors or omissions in this contract or any related document or agreement. We may choose not to enforce certain rights or delay enforcement without giving up those rights. For instance, we might extend the deadline for some payments without extending the deadline for other payments.

**Motor Vehicle Department Disclosure Authorization: You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.**

**The Revised Code of Washington § 63.14.154 does not give you a right to cancel the contract. However, we may offer you a limited right to cancel this contract under specific written terms provided to you separately.**

**THIS CONTRACT DOES NOT INCLUDE LIABILITY INSURANCE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**NOTICE TO BUYER:**

**(a) Do not sign this contract before you read it or if any spaces intended for the agreed terms, except as to unavailable information, are blank.**
**(b) You are entitled to a copy of this contract at the time you sign it.**
**(c) You may at any time pay off the full unpaid balance due under this contract, and in so doing you may receive a partial rebate of the service charge.**
**(d) The service charge does not exceed 4.99% (must be filled in) per annum computed monthly.**

**By signing below, you agree to the terms contained in this contract and acknowledge that you received a completed copy of the contract and any attachments to it on the contract date listed above.**

Signed by:
Buyer: Amy Wheeler [redacted] 03/29/2026
Amy Lynn Wh[redacted] Date

DocuSigned by:
Cobuyer: Terry Roth [redacted] 03/29/2026
Terry Lynn Ro[redacted] Date

Seller: 03/29/2026
Carvana Chrysler Dodge Jeep Ram of Casa Grande Date

This Retail Installment Contract and Security Agreement is assigned from Carvana Chrysler Dodge Jeep Ram of Casa Grande to Carvana FAC LLC without recourse.

03/29/2026
Date

By: Carvana Chrysler Dodge Jeep Ram of Casa Grande

COPY VIEW

Demo Watermark (http://www.imagepdf.com/)

Collateral Management Solutions
9750 Goethe Road | Sacramento, CA 95827
www.Vitu.com

# Carvana LLC

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Financed Date** | 3/29/2026 |
| **Loan Number** | | **Perfected Date** | 5/13/2026 |
| **Branch** | | **Payoff Date** | |
| **Borrower 1** | Amy Wheeler | **Dealer ID** | |
| **Borrower 2** | Terry Roth | **Dealer** | |
| **Borrower Address** | 8037 Dagny SW St<br>Olympia, WA 98512 | **Dealer Address** | |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | [redacted] |
| **Lienholder** | CARVANA FAC LLC |
| **Lienholder Address** | PO BOX 2996<br>PHOENIX, AZ 85062-2996 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1C4RJHAG5S8777969 | **Issuance Date** | 5/2/2026 |
| **Title Number** | | **Received Date** | 5/2/2026 |
| **Title State** | WA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2025 | **Odometer Reading** | |
| **Make** | JEEP | **Branding** | |
| **Model** | GRA | | |
| **Owner 1** | WHEELER,AMY LYNN | | |
| **Owner 2** | | | |
| **Owner Address** | 8037 DAGNY ST SW<br>OLYMPIA, WA 985125976 | | |

[redacted]

[redacted]